FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2006 JAN 25  PM 12: 57

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

LEO PRICE

VERSUS

WARDEN JAMES MILLER

CIVIL ACTION

NO. 05-2674

SECTION "S" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Leo Price, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Warden James Miller alleging that, while incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana, he was denied proper lighting in his cell. Record Doc. No. 1 (Complaint at ¶ IV).

In his original complaint, plaintiff sought no remedy beyond a determination by the court as to whether his constitutional rights were violated. Record Doc. No. 1 (Complaint at ¶ V). In his statement of facts filed in response to the court's order, Record Doc. No. 4, however, plaintiff asserted that he seeks "to recover damages for injury to

Fee
Process
X Dktd
CtRmDep
Doc. No

his person or property," and "just compensation and corrective actions for the administrative misconduct that the Plaintiff has been unduly subjected (sic)." Record Doc. No. 9 (Memorandum of Law Supporting Complaint of Cruel and Unusual Punishment at p. 1 and 5).

On November 17, 2005, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jennifer M. Medley, counsel for defendant. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Price testified that he is currently incarcerated in the Dixon Correctional Institute, but the claim he makes in this case arises during the time period February 11 to June 7, 2005, while he was incarcerated in WCI. He stated that he was in WCI at that time based upon a theft conviction on August 30, 2002, for which he is serving a five-year prison sentence.

Plaintiff confirmed that his sole claim in this case concerns a condition of his confinement at WCI relating to inadequate lighting in his cell. He testified that everything that he needs to say about his case has been set out in writing by him in the "Memorandum of Law Supporting Complaint of Cruel and Unusual Punishment" that

2

he previously filed with the court.  Record Doc. No. 9.  Much of that memorandum consists of factual assertions, and Price said during his testimony that he swears under oath to all facts asserted in that memorandum.

Price's memorandum asserts that on February 11, 2005, plaintiff's "housing unit, Sleet-4L of the Special Management Unit, experienced a disturbance which consisted of inmates tearing down cell lights, throwing food trays, and etc.  Once the tactical unit arrived at the scene and the officers quelled the disturbance, the inmates were removed from their cells and placed in the lobby of the housing unit until all trash and debris were cleaned away. After restoring order, the inmates were placed back into their cells." Plaintiff states that when he returned to his cell, he "noticed the cell lights had been removed," and was "told by members of the security unit stationed there that a mistake had been made when security removed his lights."  Plaintiff said that when he asked Warden Miller how long the cell would be without lights, the warden replied, "'You shouldn't have torn them down.'"  Record Doc. No. 9 at p. 2.

Plaintiff further states in his memorandum that he filed a grievance in the prison's administrative remedy procedure ("ARP") concerning the lighting problem and thereafter an "investigation determined that . . . plaintiff had not torn down the light fixture in his cell."  Price asserts that "[s]ince the day of the incident, [he] has complained about the

3

removal of the lights and stressed his concerns to numerous members of the security staff that he never tore down, nor damaged the light fixture in his cell in any manner." Plaintiff states that for 116 days, from February 11 until June 7, 2005, he was "forced to try to read, write, perform his religious studies, and attend to personal grooming needs in a cell so poorly illuminate[d] that its existence bordered [on] darkness." Plaintiff asserts that "the Institution's administrational carelessness and recklessness was a successfully malicious attempt to psychologically punish him and other inmates housed on that particular portion of the unit." Plaintiff further asserts that due to the lack of illumination in his cell, he has experienced eye strain and "psychological stress that arose from a state of being punished for an act [for] which he is not guilty . . . ." Id. at pp. 2 and 3.

Plaintiff also states that the artificial lighting which previously lit his cell and the natural light coming into his cell from windows has never been under his direct control, and that light from the windows, located about ten feet from his cell, "is significantly diffused by the frosting on the panes." Id. at p. 4.

Plaintiff wrote that "[d]ue to the lack of sufficient lighting, [he] suffered headaches and his eyes constantly burned and watered while trying to read in his dimly lit cell" and that "[e]ven after having the cell lights restored, it took some time for [his] sight to

become accustomed to the bright lighting and often his vision became blurred." Plaintiff stated that he requested to see an eye doctor on several occasions, "but to no avail." Id.

In his oral testimony, Price stated that he makes no claim in this case about the inmate disturbance which precipitated the problem with his lighting, but only about the lack of lighting in his cell during the subject 116-day period. He testified that there was light about ten feet away from his cell in the form of hall lighting, which he described as fluorescent bulbs about four feet long in the middle of the hallway. Price testified that this hallway fluorescent lighting was not on 24 hours a day, but only 17 hours a day, from 5 a.m. till 10 p.m.

Price described his cell as a one-man cell in the extended lockdown area, approximately six feet by eight feet, with one light in the cell that was removed after the disturbance. He said the light outside was not directly into his cell. He said he was in Cell 13, but the hallway light was outside Cell 12. Price stated that "even when the light was on, it didn't really serve me too much purpose; my cell basically stayed dark the whole while the light was removed from my cell."

Price testified that there was no window in his cell, and that while there was a window to the outdoors in the hallway across the hall from his cell, it was ten feet away.

He described the window as about 24 by 26 inches, but it was a frosted window that dimmed any sunlight that might come through.

Price confirmed that the problems he suffered as a result of the lack of adequate lighting were that it was hard for him to read, write and study. He testified that even while preparing the instant complaint he had to do it in the dark. He alleged that it was impossible for him to read and that the lack of lighting exacerbated a preexisting condition that affected his vision, specifically a tumor that had already begun to affect his vision before the lights went out. Price stated that the inadequate condition made his condition worse by causing him to have headaches and his eyes to blur and become watery. He testified that the lack of lighting also had a "psychological effect" because he had been accused of tearing his light down, but subsequent investigation established that he had not been the one who tore down the light in his cell during the disturbance. He complained that the warden initially blamed Price for tearing down his own light.

Price testified that at the end of the 116-day period, prison maintenance personnel came to his cell and restored the lighting. He complained that he had brought the problem with his lighting to the attention of prison officials numerous times, including filing a grievance in the prison administrative remedy procedure on April 18, 2005 after speaking with the warden. He acknowledged that he received a response to the grievance

6

on May 12, 2005, and the light was fixed on June 7, 2005. He said he was not satisfied with that response because on April 22, 2005, prison officials offered to switch his cell, but he had to wait for a protective screen cover to be installed on the light in that cell, which he alleged was a subterfuge for keeping him in the cell with bad lighting.

Price testified that the cell was in a disciplinary section of the jail in which he was being housed for having been found guilty of cursing out an officer, a "defiance charge."

Defendant's motion to dismiss plaintiff's complaint, based on the defense of qualified immunity, is currently pending in this case. Record Doc. No. 15. Plaintiff has filed a response. Record Doc. Nos. 19 and 24. In addition, plaintiff's sworn testimony given during the November 17, 2005 telephone conference will be considered by the court in opposition to defendant's motion.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S.Ct. 1728 (1992)). After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a

claim of violation of his constitutional rights cognizable under Section 1983 under the broadest reading.[1] Since no violation of clearly established constitutional rights is alleged, defendant is also entitled to qualified immunity.

II.    <u>MOTION TO DISMISS</u>

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must take the well-pleaded factual allegations of the complaint as true.  "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor."  <u>Lewis v. Fresne</u>, 252 F.3d 352, 357 (5th Cir. 2001); <u>accord</u> <u>Lovick v. Ritemoney Ltd.</u>, 378 F.3d 433, 437 (5th Cir. 2004).

"Given the Federal Rules' simplified standard for pleading, [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) (quotation omitted); <u>accord</u> <u>United States ex rel. Bain v. Georgia Gulf Corp.</u>, 386 F.3d 648, 653-54 (5th Cir. 2004).

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.  <u>Southern Christian Leadership Conference v. Supreme Court</u>, 252 F.3d 781, 786 (5th Cir. 2001).   "However, conclusory allegations or legal conclusions

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. (quotation omitted); accord Lovick, 378 F.3d at 437.

In a case filed by a prisoner, "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; . . . Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992) A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1). However, pro se civil rights complaints must be broadly construed. Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

## III.   QUALIFIED IMMUNITY

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process. Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare v. City of

Corinth, 135 F.3d 320, 325 (5th Cir. 1998).  The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right.  Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325. The second step requires the court to determine whether defendants' conduct was objectively reasonable under existing clearly established law.  Jacobs, 228 F.3d at 393; Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5th Cir. 1994).

IV.    NO PHYSICAL INJURY

Initially, it must be concluded that plaintiff's complaint is deficient in some respects under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary compensation or damages.

The Prison Litigation Reform Act of 1996 included the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." In several recent decisions, the Fifth Circuit has enforced this statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Price in this case.  Harrison v. Smith, 2003 WL 22946387 (5th Cir. 2003);

Criollo v. Wilson, 2003 WL 22295491 (5th Cir. 2003); Atkinson v. Johnson, 2003 WL 22012901 (5th Cir. 2003).  Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, Mississippi, 351 F.3d 626, 630 (5th Cir. 2003)(citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). Thus, in Alexander, the court found that "§ 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" where the only physical injuries they had suffered were nausea and one incident of vomiting. 351 F.3d at 630. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. 112 F.3d at 193.

In this case, the only physical injuries alleged by Price as a result of his lighting problems are eye strain and headaches.  Under Alexander and Siglar, these are mere de minimis injuries which do not meet the "physical injury" standard contained in Section 1997e(e). As the statute provides and Alexander makes clear, Price is therefore precluded from recovering general damages for the "psychological" or other emotional injury he has asserted, and that portion of his claim for relief must be dismissed.

13

However, this does not mean that Price is precluded from any relief whatsoever. The requests for relief contained in his complaint and his subsequently filed written submission include not only monetary compensation but also declaratory and injunctive relief. The Fifth Circuit and other federal courts which have considered this issue have uniformly held that Section 1997e(e) precludes only the recovery of damages for mental or emotional injury and not all other forms of relief. See Herman, 238 F.3d at 665-66 (while Section 1997e(e) precludes recovery of damages for emotional or mental injury without a showing of physical injury, it does not bar injunctive or declaratory relief); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3d Cir. 2000) (claims for nominal and punitive damages for violation of First Amendment free exercise of religion rights were not barred by Section 1997e(e) prohibition of recovery of emotional injury compensatory damages); Jones-Bey v. Cohn, 115 F. Supp.2d 936 (N.D. Individual. 2000) (Section 1997e(e) did not preclude Section 1983 action in which inmate sought injunctive relief and damages other than for mental or emotional distress, even without showing of prior physical injury).

While Price has failed to allege physical injury sufficient to permit him to recover general damages for psychological distress or emotional suffering, his claims are not barred in their entirety. Section 1997e(e) does not preclude plaintiff from recovering the

14

declaratory or injunctive relief sought in his written submissions or nominal damages

such as $1 for violation of his constitutional rights, if appropriate and to the extent he

otherwise states cognizable claims for relief under Section 1983.

V.      CONDITIONS OF CONFINEMENT: LIGHTING

Plaintiff's testimony establishes that he was a convicted prisoner at all relevant

times concerning the lighting condition about which he complains. Thus, the Eighth

Amendment legal standard applies to his claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment

on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if

they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly

disproportionate to the severity of the crime warranting imprisonment.'" Hamilton v.

Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337,

347 (1981); citing Estelle, 429 U.S. at 103; Hutto v. Finney, 437 U.S. 678, 687 (1978)).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must

satisfy tests for both objective and subjective components." Davis, 157 F.3d at 1006

(citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson, 501 U.S. at 298-99;

Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a

claim of unconstitutional conditions of confinement, this court must ask if 'the officials

15

act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303).  If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes.  Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs."  Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  Id. at 347, 101 S. Ct. at 2399. Conditions that "cannot be said to be cruel and unusual under contemporary standards

are not unconstitutional." Id.  The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989) (footnote omitted).

    In this case, plaintiff has not alleged any condition that, if proven at trial, would result in the finding of a constitutional violation.  Plaintiff alleges that the light fixture in his cell was not working for 116 days following an inmate disturbance in which the light fixture was damaged.  He was not cast in total darkness, however, since some light was provided from the hallway and a nearby window.  Under the circumstances described in plaintiff's testimony and written submissions, this amounts to nothing more than an allegation of minor inconvenience or discomfort, not the kind of grave deprivation of the minimal civilized measure of life's necessities, constituting an extreme deprivation constituting any serious health threat.  Reported decisions, some cited by plaintiff, which characterize some kinds of lighting as constitutionally inadequate, consistently involve lighting deprivation much worse and more deleterious to health than that described by Price, and find the lighting constitutionally inadequate only in combination with other severe conditions of confinement.  See Gates v. Cook, 376 F.3d

17

323, 332, 334-35 (5th Cir. 2004) (low lighting combined with "filthy" cell conditions and probability of heat-related illness in death row unit); Palmigiano v. Garrahy, 443 F.Supp. 956, 961-64 (D.R.I. 1977) (inadequate lighting combined with "deafening and maddening" noise level, antiquated heating and ventilation, fire hazards and numerous other severe conditions); Toussaint v. McCarthy, 597 F.Supp. 1388 (N.D. Cal. 1984) (inadequate lighting part of severe conditions, including noise, heating and ventilation, plumbing, food storage and preparation etc.). Unlike these cases, the lighting problem alleged by Price was an isolated, solitary and temporary condition. Wilson, 878 F. 2d at 849. Plaintiff testified that lighting in the walkway outside his cell functioned appropriately and that there was a window outside his cell. Thus, the amount of lighting described by plaintiff in his testimony cannot be found constitutionally inadequate. Rhodes, 452 U.S. at 365, 101 S. Ct. at 2409 (finding that one light fixture per cell is "adequate"); cf. Vest v. Lubbock County Commissioners Court, 444 F. Supp. 824, 828 (N.D. Tx. 1977) (finding **no** lighting in the cells or day rooms inadequate).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. Wilson, 501 U.S. at 303. "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows

that the inmates face a substantial risk of serious harm and disregards that risk by failing

to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth
> Amendment, the prisoner must show that the defendants (1) were aware of
> facts from which an inference of an excessive risk to the prisoner's health
> or safety could be drawn and (2) that they actually drew an inference that
> such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837).

"Under exceptional circumstances, a prison official's knowledge of a substantial risk of

harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511

U.S. at 842 & n.8).   "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511

U.S. at 838-40).

Plaintiff has alleged no facts which show that the defendant or any other party

acted with "deliberate indifference" in either creating these conditions or failing to

respond to them.  The condition was caused initially by inmates, not prison officials.

According to plaintiff's testimony, it was fixed after it was determined that plaintiff had

not damaged it in the first place and shortly after he complied with the prison's

administrative remedies procedure. Plaintiff has not alleged a "serious risk of harm" and

has not alleged facts sufficient to show that defendants actually drew an inference that

an <u>excessive</u> risk of harm to plaintiff existed because of the temporary reduced lighting in his cell.

In short, Price's complaint about the temporary inadequate lighting in his cell does not rise to the level of a constitutional violation.   Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."   <u>Holloway v. Gunnell</u>, 685 F.2d 150, 156 (5th Cir. 1982).   Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998). Living in conditions such as those described by Price may be a temporary inconvenience, but he has not alleged sufficiently serious harm resulting from the lighting problem to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.   Thus, plaintiff has not alleged violation of a clearly established constitutional right, and defendant is entitled to qualified immunity.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that defendant's motion to dismiss be GRANTED and plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ⟨25th⟩ day of January, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE